720 S.E.2d 163

EURENERGY RESOURCES CORPORA-
TION, a foreign corporation, Defen-
dant Below, Petitioner

v.

S & A PROPERTY RESEARCH, LLC, a
West Virginia Limited Liability Com-
pany, Plaintiff Below, Respondent.

No. 35523.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 19, 2011.

Decided Nov. 17, 2011.

Steven L. Thomas, Esq., Xavier W. Staggs, Esq., Kay Casto & Chaney, Charleston, WV, for Petitioner.

Andrew C. Woofter, III, Andrew C. Woofter, III, PLLC, Parkersburg, WV, for Respondent.

PER CURIAM:

The petitioner, EurEnergy Resources Corporation, appeals from the May 19, 2009, and July 28, 2009, orders of the Circuit Court of Wood County, which found that the petitioner and the respondent, S & A Property Research, LLC, had reached a settlement regarding unpaid invoices for services. The petitioner seeks a reversal of the orders granting judgment in the respondent's favor. After review of the parties' briefs and arguments before this Court, a thorough review of the record and the applicable law, we find that there was no settlement between the parties. We therefore reverse the orders concluding that there was a full settlement of the claims and remand this case for further proceedings as detailed herein.

I.

FACTUAL AND PROCEDURAL HISTORY

The petitioner, EurEnergy Resources Corporation (hereinafter "EurEnergy"), is a Nevada corporation with a principal office in Dallas, Texas, engaged in the exploration and development of natural and mineral resources throughout the United States. It is an affiliate of New Concept Energy (hereinafter "NCE"). In March of 2008, EurEnergy contracted with S & A Property Research, LLC, (hereinafter "S & A"), a West Virginia limited liability corporation, for the performance of "landman" services in West Virginia. These services included determining the ownership, encumbrances and other titling aspects of tracts of land on which EurEnergy sought to develop natural resources. The principal of S & A is Amy Gough. In April of 2008, after representatives of EurEnergy and Ms. Gough discussed the provision of services by the respondent, the parties entered into a written contract detailing the terms of their agreement and S & A commenced work for EurEnergy.

A dispute arose in the fall of 2008 between the parties over the amounts and the payment of S & A's invoices, resulting in the filing by S & A of a civil action in the Circuit Court of Wood County in December of 2008. In this action, S & A sought to recover the amounts allegedly due under the contested invoices. Because EurEnergy was not registered to do business in West Virginia, S & A attempted to serve the petitioner through the Secretary of State's office, pursuant to West Virginia's statute detailing service upon a corporation, W. Va.Code § 31D-5-506(d)(2008).[1] The Secretary of State's office accepted the complaint and then mailed it to EurEnergy's headquarters in Dallas, Texas. The address to which the complaint was sent is the mailing address for a number of companies, including EurEnergy and NCE. Signing for the parcel was an employee of NCE, Celeste Moomaw.[2]

---

1. W. Va.Code § 31D–5–504(b) states as follows:

(b) If a corporation has no registered agent, or the agent cannot with reasonable diligence be served, the corporation may be served by registered or certified mail, return receipt requested, addressed to the secretary of the corporation at its principal office. Service is perfected under this subsection at the earliest of:

(1) The date the corporation receives the mail;

(2) The date shown on the return receipt, if signed on behalf of the corporation; or

(3) Five days after its deposit in the United States mail, as evidenced by the postmark, if mailed postpaid and correctly addressed.

2. Questions of service were made in the underlying proceeding as part of the petitioner's motion to set aside the default judgment. Ms. Moomaw testified at a hearing that she was not an employee of the petitioner, but did accept mail and packages for a number of companies, including EurEnergy. She testified that while she signed for the complaint on December 29, 2008, because of illness she did not open or read the

EurEnergy never filed a response to S & A's complaint. On January 29, 2009, the circuit court entered judgment in the amount of $690,153.42 against EurEnergy and in favor of S & A by default, because EurEnergy failed to timely file an answer.

After the filing of the civil action seeking payment for the unpaid invoices but prior to the entry of the default judgment, EurEnergy communicated by e-mail with counsel for S & A regarding payment. Counsel for S & A wrote to Dave Morgan, the managing director of EurEnergy, as follows:

> Mr. Morgan: I have not heard from you in some time. If EurEnergy is still willing to try to resolve this matter, my client is willing to discuss it. Of course, if you have retained counsel regarding this matter, I may not communicate directly with you and must discuss this matter with your counsel.

Mr. Morgan responded by e-mail on December 19, 2008. His response was as follows:

> We do want to resolve the issue, but as many other businesses, the credit crunch has affected us also.
>
> I am planning a trip to W. Va. the first week of 2009. Would like to have a personal meeting and reach a settlement at that time. I will have a clearer picture of the cash availability, and if nothing else work out a payment plan, but certainly take positive action towards (sic) the settlement. I will advise by 12/12 the date and make the appointment.
>
> Please advise where things stand. Thank you for your cooperation.

On January 9, 2009, Mr. Morgan sent the following e-mail to counsel for appellee:

> I am able to be on (sic) W. Va. Today, Friday Jan. 9. If you would like to meet about 3:00 to see if we can settle the SA Property matter, I can be in Parkersburg and do so . . .

Counsel for S & A and Morgan did meet on January 9, 2009. During these negotiations, S & A presented Morgan with additional unpaid invoices, over and above that amount being sought in the filed lawsuit. Present in the negotiations as an observer, according to the appellant, and not in any official capacity, was Doug Wight from NCE. NCE was not a party to the underlying civil action in Wood County filed by S & A against the EurEnergy. After their discussions, a handwritten document was created at that meeting, bearing the signature of Mr. Morgan alone. EurEnergy agreed that Mr. Morgan wrote this document, which contained certain terms, including a notation of $500,000, beside which the initials NCE were written, as well as a notation of $100,000, beside which a reference was made to the petitioner. Dates and monetary amounts were also on the paper, as though the parties discussed payment of some amount under a time schedule. The notation of "R. 408 applies" appeared at the bottom of the document. EurEnergy contended that this indicated that the document was not a binding settlement agreement but was at most an offer of settlement within the definition of the rule.[3] After that meeting, and later on that same day, counsel for S & A drafted a letter to Morgan. This letter said:

> Please allow this letter to serve as confirmation that we have agreed to resolve this matter on the following terms, to-wit: EurEnergy will pay S & A the sum of One Hundred Thousand Dollars ($100,000.00) cash; New Concept Energy will sign a note payable to S & A in the original principal amount of Five Hundred Thousand Dollars ($500,000.00), payable in five equal installments of One Hundred Thousand Dollars ($100,000.00) each, beginning February 15, 2009, and continuing on the 15th calendar day of each subsequent month until the total sum of Six Hundred Thousand Dollars ($600,000.00) is paid in full.

contents of the package until February 12, 2009. By this time S & A had already obtained a default judgment against EurEnergy.

**3.** The parties agree that this notation referred to Rule 408 of the Federal Rules of Evidence, which limits the admissibility of offers of compromise into trial proceedings. The West Virginia rule, as well as the Texas rule, are similar.

The vehicle that we need to have in place to make this work is this: EurEnergy will sign an Agreed Order of Judgment in the amount of Six Hundred Thousand Dollars ($600,000.00), and both parties will then sign a Forebearance (sic) Agreement, whereby S & A would agree not to take any action to enforce this judgment against EurEnergy so long as it (or New Concept) complies with the letter of the payment terms outlined above. Once the $600,000.00 is paid in full, S & A will dismiss this suit with prejudice. If, at that point, EurEnergy would want a release from S & A, it will sign an appropriate release. Moreover, EurEnergy needs to wire the $100,000.00 payment to my Office Trust Account forthwith, but in no event later than Thursday, January 15, 2009. I will hold the $100,000.00 in my trust account until we have a signed judgment order and forebearance agreement, at which time I would disburse to S & A.

Though this letter contained several points which occur in Mr. Morgan's note, the letter also contained new terms and related requirements not referenced in Mr. Morgan's note.

On January 12, 2009, Morgan sent an e-mail to counsel for S & A, in which he stated:

I cannot agree to a judgment, so the offer as you have responded is off the table. I will issue a separate offer by Thursday morning after meeting with our counsel and my board of directors.

That same day, counsel for S & A responded, in an e-mail to Morgan:

David: We have a binding agreement that EurEnergy (and/or New Concept) will pay my client $600,000.00 total to resolve this issue. The only issue on the table is the means to get to the agreed-upon end. Performance of the initial cash payment will likely go a long way toward my client's agreement to a simple note from whomever. So long as the $100,000.00 is wired to my trust account by Wednesday (The Huntington's "day" ends at 2:00 p.m. EST), S & A will accept a Note from EurEnergy and/or New Concept, but will not dismiss the instant lawsuit until payment of the $600,000.00 in full is made. You all must perform by making the initial payment by Wednesday and making the payments under the Note by the 15th of each subsequent month (February 15, 2009 through and including June 15, 2009). I will need to see the Proposed Note as well. I will be calling in follow up this afternoon.

On February 18, 2009, EurEnergy filed a motion to void or vacate the default judgment entered against it on January 29, 2009. EurEnergy argued that there had been improper service upon it, rendering the court devoid of jurisdiction to enter a default judgment, and alternatively, that principals of equity required that the default judgment be set aside and the matter heard on the merits.

On March 29, 2009, S & A filed a motion to enforce the settlement agreement. Both the motion to enforce the settlement and the motion to vacate the default judgment were scheduled for hearing on April 9, 2009.

EurEnergy petitioner presented testimony that Mr. Morgan was not authorized to bind NCE in any manner because that authority had to come from the corporation's board of governors. Mr. Morgan stated that while he may have had the authority to extend an offer on behalf of EurEnergy, he did not have the requisite authority to speak for any other corporate entity. EurEnergy argued that the presence of Mr. Wight from NCE, who did not appear to actively participate in the discussions between EurEnergy and S & A, did not convey that authorization of the board of NCE. EurEnergy also presented testimony from Mr. Morgan, the scrivenor of the so-called settlement agreement, that the notation of "Rule 408 Applies" was intended to indicate that this writing was not a settlement, but merely indicative of the discussions of settlement, and would not be admissible in court proceedings.

S & A argued that the written note was indeed a settlement offer that resulted from the ongoing discussions between the parties to compromise the debt owed by EurEnergy to S & A Property Research. S & A urged the lower court to find that all the necessary elements were present for the finding that there was a full and complete settlement of this claim, as written by Mr. Morgan.

By order entered May 19, 2009, the Wood County Circuit Court enforced the settlement purportedly entered into by S & A, and EurEnergy. This order did not, however, contain a ruling on EurEnergy's motion to set aside the default judgment order entered on January 29, 2009. The circuit court found that the settlement was reached during the meeting of January 9, leaving only the details of payment undetermined. Thus, the circuit court found that EurEnergy and S & A had a meeting of the minds. In the order enforcing the settlement, the circuit court questioned why EurEnergy did not renounce the agreement at the meeting if in fact there was no settlement offer by Mr. Morgan. The circuit court also called the reference to Rule 408 as "odd." The lower court further found that Mr. Morgan had the authority to speak for NCE, because Mr. Wight was present at the settlement meeting. The circuit court found as follows:

It is clear to the Court that when the parties concluded their meeting on January 9, 2009, there was a complete, binding, and enforceable settlement agreement in the total amount of $600,000.00. The only issue remaining to be determined and agreed upon was the method in which the Defendant would makes its payments to the Plaintiff. These are two separate issues and the Defendant did not provide any proposal as to how it would fulfill its obligation to pay the Plaintiff. As a result, the parties did not agree on the method and the Defendant has not paid any of the sums it agreed to pay on January 9, 2009. The Court finds that the Plaintiff had already accepted the Defendant's offer of $600,000.00 before the meeting concluded on January 9, 2009, and that Plaintiff's counsel's letter to Mr. Morgan does not constitute a counteroffer.

Based on the foregoing, the Court finds that the Defendant, through Mr. Morgan, its Managing Director, made a written settlement offer in the total amount of $600,000.00 to be paid to the Plaintiff, the Plaintiff, through its sole member, Ms. Gough, orally accepted the offer. Further, an offer to compromise a claim in litigation

is supported by consideration, Syl. Pt. 3, *Sanders v. Roselawn Memorial Gardens,* 152 W.Va. 91, 159 S.E.2d 784 (1968), and the Court finds that the settlement agreement in this case is supported by consideration. As such, the Court finds and concludes that there is a valid and enforceable settlement agreement between the parties and that the Plaintiff's Motion to Enforce Settlement Agreement should be granted.

This order, however, did not include a judgment in favor of S & A from and against EurEnergy. By separate order entered on July 28, 2009, the court entered judgment in favor of S & A and against EurEnergy in the total amount of $606,202.00, said amount representing the settlement amount of $600,000.00 plus attorney fees in the amount of $6,202.00 incurred by the respondent. The circuit court did not rule on the motion of EurEnergy to set aside the default judgment previously entered. The appeal of EurEnergy followed.

## II.

### STANDARD OF REVIEW

Our standard of review in this case is well settled. "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syl. pt. 2, *Walker v. West Virginia Ethics Com'n,* 201 W.Va. 108, 492 S.E.2d 167 (1997).

## III.

### DISCUSSION

The appellant raises six issues in its appeal to this court. The primary issue is whether there was a settlement between the petitioner and respondent. If the ultimate conclusion is that the parties did not reach a full settlement, this Court need not address the remaining issues reserved for appeal.[4]

---

4.  The issues preserved for this appeal are:

I.  Whether the circuit court erred in granting

■ This Court has held that a dispute over whether a settlement has been effectuated is a question of contract. The general rule is that a compromise or settlement agreement is favored by law and is to be construed as any other contract. See, *Floyd v. Watson*, 163 W.Va. 65, 254 S.E.2d 687 (1979); *Wright v. Davis*, 132 W.Va. 722, 53 S.E.2d 335 (1949); *Janney v. Virginian Railway*, 119 W.Va. 249, 193 S.E. 187 (1937); and *Maze v. Bennett*, 114 W.Va. 169, 171 S.E. 249 (1933). As such, we must review whether the elements of a valid contract are present in the case *sub judice*. We have held that "[t]he fundamentals of a legal contract are competent parties, legal subject-matter, valuable consideration and mutual assent. There can be no contract, if there is one of these essential elements upon which the minds of the parties are not in agreement." Syl. pt. 5, *Virginian Exp. Coal Co. v. Rowland Land Co.*, 100 W.Va. 559, 131 S.E. 253 (1926).

Our review begins with the negotiations that took place between counsel for S & A and EurEnergy's representative, Mr. Morgan, both in person and through e-mail and letter. Throughout the month of December, these individuals exchanged e-mail correspondence acknowledging that there was a dispute over the payment of invoices submitted by the respondent. This correspondence took place after S & A filed a civil action seeking a judgment against EurEnergy for the same sums. EurEnergy's representative made arrangements to come to West Virginia from Texas to attempt to resolve the outstanding issues. Once here, the parties met and discussed the issues in dispute. At some point, Mr. Morgan prepared a handwritten

document that appeared to outline terms of the possible agreement.

■ Based upon the actions of EurEnergy's representative Mr. Morgan, after he left West Virginia, however, it is apparent that there was never an agreement, either in whole or in part, about the payment of these unpaid invoices. Almost immediately upon his return to Texas, Mr. Morgan repudiated the purported settlement correspondence to him from S & A, stating that he did not have the authority to speak for New Concept Energy. Morgan's testimony give further support to the conclusion that there was no agreement. Mr. Morgan appears simply to have been making certain assumptions for the purposes of settlement discussions regarding the propriety of the invoices. There is no indication that there was a binding offer of settlement. Morgan's note specifically referred to an evidentiary rule that protects settlement negotiations and discussions from being used in court as evidence of a settlement. The mention of Rule 408 further supports a conclusion that these were mere settlement discussions, not a full and complete settlement. The circuit court erroneously concluded that there was mutual assent. At best these discussions were evidence of a willingness on the part of EurEnergy to compromise the outstanding balances owed by it to S & A, but there was not a final agreement when the parties left the room and returned to their places of business.

We conclude, therefore, that the circuit court erred in its finding that there was a full, complete and enforceable settlement reached between the petitioner, EurEnergy Resources Corporation, and S & A Property

plaintiff's Motion for Enforcement of Settlement Agreement where plaintiff failed to achieve service of process on defendant.

II. Whether the circuit court erred in granting plaintiff's Motion for Enforcement of Settlement Agreement where plaintiff failed to prove that defendant made an offer of settlement.

III. Whether the circuit court erred in granting plaintiff's Motion for Enforcement of Settlement Agreement where plaintiff failed to prove that it accepted the alleged offer rather than making a counter offer.

IV. Whether the circuit court erred in granting plaintiff's Motion for Enforcement of Set-

tlement Agreement where plaintiff failed to prove that there was a meeting of the minds between the parties on the essential terms of the alleged settlement agreement.

V. Assuming, arguendo, that a settlement agreement existed, whether the circuit court erred in awarding plaintiff $600,000 where defendant was only obligated to pay $100,000 under the alleged settlement agreement.

VI. Assuming, arguendo, that a settlement agreement existed, whether the circuit court erred in awarding plaintiff legal fees incurred for efforts other than enforcing the alleged settlement agreement?

Research, LLC, on January 9, 2009. The record supports a finding that these were merely settlement discussions, and that a meeting of the minds did not take place on that occasion. This conclusion is supported by the almost immediate rejection of the new terms and conditions contained in the letter from S & A's counsel to the EurEnergy's representative, Mr. Morgan, written the day of the so-called settlement.

We also note that there appears to be pending below a motion by EurEnergy to set aside the default judgment order entered January 29, 2009, by the Circuit Court of Wood County in this matter. The grounds for this motion were similar to some of the arguments in this case, including the purported failure to properly serve the petitioner with notice of the pending civil action. We decline, however, to opine on the issue of the propriety of the service in this case. This remains undecided by the circuit court and should be decided by the circuit court when it finally rules on the motion of the petitioner to set aside the default judgment entered on January 29, 2009.

Concluding that there was no enforceable settlement between the petitioner and the respondent, we reverse the orders of the Circuit Court of Wood County granting judgment in favor of S & A Property Research, LLC, on the settlement issue, and we remand this case for hearing on the motion to set aside the default judgment filed by EurEnergy Resources Corporation.

## IV.

## CONCLUSION

For the foregoing reasons, we reverse the orders of the Circuit Court of Wood County entered May 19, 2009, and July 28, 2009, granting judgment in favor of the respondent, S & A Property Research, LLC, and against the petitioner, EurEnergy Resources Corporation, in the amount of $606,202.00, as part of a perceived settlement, and remand this case for hearing and consideration of the motion to set aside the default judgment hereinbefore entered by order of January 29, 2009, previously filed by the petitioner, EurEnergy Resources Corporation.

Reversed and remanded.